IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

KIMBERLY DANIEL and STEVEE        *
ROBINSON, Individually and on     *
behalf of the Estate of           *
Stephen Gerard Daniel,            *
                                  *       CV 121-040
        Plaintiffs,               *
                                  *
        v.                        *
                                  *
HOMER BRYSON, STAN SHEPARD,       *
RANDY BROWN, TIMOTHY YOUNG,       *
and MARY ALSTON,                  *
                                  *
        Defendants.               *
                                  *

---

**O R D E R**

---

Presently before the Court is Defendants Homer Bryson, Stan Shepard, Randy Brown, and Mary Alston's motion for summary judgment. (Doc. 54.) For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED**.

## I. BACKGROUND

This case arises out of the incarceration and death of Stephen Gerard Daniel ("Daniel"). (Doc. 1.) Plaintiffs Kimberly Daniel and Stevee Robinson, the co-administrators of the estate of their father, Daniel, allege Daniel succumbed to "septic shock representing a complication of paraplegia . . . and Crohn's [D]isease" while in Georgia Department of Corrections ("GDOC")

custody.  (Id. at 8.)  Plaintiffs bring suit pursuant to 42 U.S.C. § 1983 against Defendants for deliberate indifference to Daniel's serious medical needs and failure to adequately train and supervise in violation of his Eighth Amendment and Fourteenth Amendment rights.[1]  (Id. at 20-24.)  Plaintiffs allege their father's death was caused by "a gross, systemic lack of basic medical care for [GDOC] inmates."  (Id. at 9.)

The facts of the underlying incident are as follows.[2]  In April 2014, Daniel was in a car accident that left him partially paralyzed.  (Doc. 54-2, at 4.)  As a result of the paralysis, Daniel began to use a colostomy bag and catheter.  (Id.; Doc. 58, at 2-3.)  Prior to his imprisonment, Daniel developed a decubitus ulcer that required surgery, and he had a history of medical issues, including urinary tract infections.  (Doc. 54-2, at 4.)  In early 2018, Daniel was also diagnosed with Crohn's disease.  (Id.)

---

[1] Plaintiffs also asserted a negligence claim under the Georgia Tort Claims Act, which the Court previously dismissed under the theory of sovereign immunity. (Doc. 38, at 3-5.)

[2] The relevant facts are primarily from Defendants' Statement of Material Facts ("SOMF"), Plaintiffs' response to Defendants' SOMF, and Plaintiffs' response in opposition to Defendants' motion for summary judgment. (Docs. 54-2, 58-1, 58.) Although Plaintiffs did not file a separate statement of material facts, the Court will consider the facts in the background section of Plaintiffs' response in opposition that are supported by citation to the record. (See Doc. 58, at 2-5.) However, the facts in Defendant's SOMF that Plaintiffs do not controvert in their response or in their background section are deemed admitted. L.R. 56.1, SDGa. ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party.").

On October 11, 2017, Daniel began his incarceration within the GDOC. (Id. at 2.)   He was first imprisoned at Coastal State Prison and then was transferred to Johnson State Prison, where he remained until he was transferred to Augusta State Medical Prison ("ASMP") on December 7, 2017.   (Id.)   During his imprisonment, Daniel again developed decubitus ulcers.   (Id. at 4.)   At ASMP, Dr. Smitha Suraj oversaw Daniel's medical care, and over the course of his medical care, Dr. Suraj "consulted with multiple medical specialists, including specialists dealing with gastroenterology and infectious diseases, and followed the recommendations of those specialists in providing care for Daniel."   (Id. at 4-5.)   Dr. Suraj "also sent Daniel to the Augusta University Medical [C]enter for more intensive medical care than the ASMP infirmary could provide."   (Id. at 5.)   However, on two occasions, Daniel refused treatments.   (Id.)   Tragically, on February 22, 2019, Daniel died at Augusta University Medical Center.   (Id.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   Facts are "material" if they could affect the outcome of the suit under the governing substantive law.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   The Court must view the facts in the light

most favorable to the non-moving party, Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation and internal quotation marks omitted).   The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case, or by showing that there is no evidence to prove a fact necessary to the non-movant's case.   See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex, 477 U.S. 317).   Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movants have met their initial burden of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.   Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam).   A mere conclusory

4

statement that the non-movant cannot meet the burden at trial is insufficient. <u>Clark</u>, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." <u>Id.</u> When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. <u>Id.</u> If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." <u>Fitzpatrick</u>, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1116-17 (citation omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. <u>See Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided Plaintiffs notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 55.)  For that reason, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied.  The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.

### III. DISCUSSION

Plaintiffs allege Defendants violated Daniel's rights under the Eighth and Fourteenth Amendments because they were deliberately indifferent to Daniel's serious medical needs and failed to adequately train and supervise.  (Doc. 1, at 20-24.) Defendants now move for summary judgment on Plaintiffs' claims. (Doc. 54.)  Before addressing the motion for summary judgment, the Court addresses three preliminary matters.

First, Plaintiffs do not oppose summary judgment as to Defendants Bryson and Shepard and "agree that [Defendants Bryson and Shepard] were not in their respective roles during the period of []Daniel's incarceration . . . ." (Doc. 58, at 6 n.1)  Based on Plaintiffs' concession, summary judgment is **GRANTED** as to Defendants Bryson and Shepard.

6

Second, Defendants argue "[d]epending on what time of day
. . . Daniel arrived at ASMP, he overlapped with Defendant Brown
by either one or two days." (Doc. 54-1, at 10.)  Based upon this,
Defendants argue "[Defendant] Brown had no involvement or
awareness of any treatment provided to Daniel, and thus, no
awareness of any unmet need." (Id.)  Plaintiffs "acknowledge that
Defendant [] Brown was the health services administrator at ASMP
for only a relatively short portion of Daniel's incarceration."
(Doc. 58, at 6 n.1)  Plaintiffs then proceed to argue that "if
[the] Court concludes that Plaintiffs' claim against Dr. [Alston]
can proceed, [then they] do not object to the dismissal of the
health service administrator;" however, if summary judgment is
granted for Defendant Dr. Alston, Plaintiffs request to amend their
complaint "to include Defendant Brown's successor as health
services administrator" because they "were not able to determine
when [Defendant] Brown had left his post until after discovery
closed" and Defendant Brown would not be prejudiced. (Id.)
Defendants contend Plaintiffs "kind of, but not really,
acknowledge that Defendant Brown is entitled to judgment as [he]
left his employment at ASMP one day after Daniel arrived." (Doc.
59, at 1 n.1 (citations omitted).)  Moreover, Defendants oppose
Plaintiffs' request to amend because the deadline for motions to
amend or add parties was more than a year ago, and the statute of
limitations has run. (Id. at 6.)  Because there is no dispute

7

that Defendant Brown's employment did not significantly overlap with Daniel's incarceration at ASMP, the Court finds Defendant Brown was not responsible for Daniel's treatment and medical supplies used for his treatment because his employment ended a few days after Daniel's arrival at ASMP. (See Doc. 54-2, ¶¶ 4, 19-20.) As for Plaintiffs' request to amend their complaint, the Eleventh Circuit has determined that when the "motion to amend [is] filed after the scheduling order's deadline, [the moving party] must first demonstrate good cause under Rule 16(b) before [the court] will consider whether amendment is proper under Rule 15(a)." Sosa v. Airprint Sys., Inc., 133. F. 3d 1417, 1419 (11th Cir. 1998) (citations omitted). Plaintiffs made no attempt to show good cause or provide any explanation for why it took them until after discovery to determine when Defendant Brown's employment ended. See Donley v. City of Morrow, 601 F. App'x 805, 811-12 (11th Cir. 2015) (affirming denial of a plaintiff's motion to amend his complaint where the plaintiff failed to mention Rule 16(b) in briefing and ignored the Rule's requirements). Therefore, Plaintiffs' request to amend is **DENIED** and summary judgment as to Defendant Brown is **GRANTED**.

Third, the Court notes that Defendants' motion for summary judgment only addresses Plaintiffs' claims under the Eighth Amendment despite Plaintiffs' Complaint also referencing the Fourteenth Amendment. (See Doc. 54-1, at 1; Doc. 1, at 20, 21.)

Plaintiffs' claims for violation of Daniel's Fourteenth Amendment rights are based upon the same facts as their claims for violation of Daniel's Eighth Amendment rights. (Doc. 1, at 20-23.) It is unclear whether Defendants intended to only address the Eighth Amendment claims or if they did not realize Plaintiffs also brought claims under the Fourteenth Amendment, but "[a] government officials' treatment of pretrial detainees is governed by the Due Process Clause of the Fourteenth Amendment, while treatment of convicted prisoners is governed by the Eighth Amendment." Hranek v. Consol. City of Jacksonville, No. 21-13806, 2022 WL 3221907, at *2 (11th Cir. Aug. 10, 2022) (citation omitted). Therefore, regardless of whether Defendants address Plaintiffs' Fourteenth Amendment claim, "pretrial detainees are afforded the same protection as prisoners, and cases analyzing deliberate indifference claims of pretrial detainees and prisoners can be used interchangeably." McDaniels v. Lee, 405 Fed. App'x 456, 458 (11th Cir. 2010) (citation omitted). Even though the difference does not impact the Court's analysis, the Court will construe Plaintiffs' claims as being governed by the Eighth Amendment because Plaintiffs' contest the conditions of Daniel's incarceration and not his time as a pretrial detainee.

Based on the foregoing, the only remaining claims are Plaintiffs' claims against Dr. Alston.[3] Dr. Alston raises two main arguments in support of summary judgment: (1) Plaintiffs cannot prove an Eighth Amendment violation and (2) she is entitled to qualified immunity. (Doc. 54-1, at 6, 11.) The Court addresses each argument below.

## A. Eighth Amendment Violation

Plaintiffs allege Daniel's rights under the Eighth Amendment were violated because (1) Dr. Alston was deliberately indifferent to Daniel's serious medical needs and (2) Dr. Alston was deliberately indifferent to Daniel's serious medical needs by failing to train and supervise. (Doc. 1, at 20-23.) Dr. Alston argues "Plaintiffs cannot prove causation or the subjective knowledge necessary to an Eighth Amendment claim." (Doc. 54-1, at 9.)

Deliberate indifference to the serious medical need of a prisoner is proscribed by the Eighth Amendment's prohibition of unnecessary and wanton infliction of pain. Harris v. Leder, 519 F. App'x 590, 595 (11th Cir. 2013) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To prove a claim of deliberate indifference, plaintiff must establish an "objectively serious medical need" and that the defendant "(1) had subjective knowledge of a risk of

---

[3] Because Dr. Alston is the only remaining Defendant, the Court will only refer to Dr. Alston in addressing Defendants' arguments made in support of their motion.

serious harm, (2) disregarded that risk, and (3) acted with more than *gross* negligence." Wade v. McDade, 67 F.4th 1363, 1374 (11th Cir. 2023) (citations omitted) (emphasis in original). A defendant is liable if a plaintiff "can demonstrate that [the defendant] either personally participated in the acts comprising the alleged constitutional violation or instigated or adopted a policy that violated [plaintiff's] constitutional rights." Adams v. Poag, 61 F.3d 1537, 1544 (11th Cir. 1995) (citation omitted).

First, the Court finds, and Dr. Alston does not seem to dispute, that Crohn's disease and decubitus ulcers satisfy the objective component of a serious medical need because these conditions required treatment. See Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (stating that a medical need satisfies the objective component if it "has been diagnosed by a physician as mandating treatment"); (Doc. 54-1, at 4-5.) However, Dr. Alston argues she was in a supervisory position and did not have "any 'hands-on' dealings with Daniel." (Doc. 54-1, at 9.) In response, Plaintiffs argue "Dr. Alston clearly remembered []Daniel's case" and "can be held individually liable for her failure to eliminate" practices that created "real and serious delays in the provision of medical treatment and supplies as a matter of course at ASMP." (Doc. 58, at 9.) However, in their response, Plaintiffs do not raise any arguments that Dr. Alston personally provided treatment to Daniel; rather, Plaintiffs contend "Dr. Alston had supervisory

responsibility for ensuring that medical practitioners had the tools they need to do . . . their job[s]." (Id. at 10.) Because Plaintiffs effectively concede Dr. Alston was in a supervisory position and did not personally provide Daniel treatment, Dr. Alston "can be held liable only if she 'instigated or adopted a policy that violated [Daniel's] constitutional rights.'" Wade, 67 F.4th at 1376 (citation omitted).

"The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Braddy v. Fla. Dep't of Labor and Emp. Sec., 133 F.3d 797, 802 (11th Cir. 1998). The Eleventh Circuit provides a three-prong test to determine supervisory liability:

> (1) whether the supervisor's failure to adequately train and supervise subordinates constituted deliberate indifference to an inmate's medical needs; (2) whether a reasonable person in the supervisor's position would understand that the failure to train and supervise constituted deliberate indifference; and (3) whether the supervisor's conduct was causally related to the subordinate's constitutional violation.

Wade, 67 F.4th at 1377 (quoting Adams, 61 F.3d at 1544). A causal connection is shown when

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [she] fails to do so; (2) a supervisor's custom or policy . . . results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

Id. (citation and quotation marks omitted).

Dr. Alston argues she "may have had some general awareness of [Daniel's] medical needs but she was not actively involved in managing his care." (Doc. 54-1, at 10.) Regardless, she argues this is not deliberate indifference because "[his] treatment was overseen by . . . a physician [she] considered well qualified to handle Daniel's care." (Id.) Moreover, she argues that she was not aware of any issues related to Daniel's medical equipment or nutrition and did not have direct oversight over these things. (Id.) In response, Plaintiffs argue there is sufficient evidence for a jury to find "Dr. Alston was aware both of widespread problems at ASMP in providing timely medical service and supplies to inmates, and that a failure to provide such treatment and supplies to []Daniel specifically would pose a grave risk of him developing an infection that, given his co-morbidities, would spin out of control." (Doc. 58, at 7.) Plaintiffs rely on their Complaint and Dr. Alston's deposition to demonstrate this. (Id. at 7-9 (citations omitted).) Specifically, Plaintiffs argue their Complaint disclosed Dr. Timothy Young, a former doctor at ASMP who "alleged widespread and extreme delays in the administration of medical services at ASMP." (Id. at 7.) According to Plaintiff, they "can plausibly prove at trial [these concerns] by calling Dr. Young as a witness," but they contend calling Dr. Young would be "unnecessary[] because Dr. Alston acknowledge[d] that she learned of Dr. Young's concerns at the time Daniel was incarcerated there."

(Id. at 7-8.)   Plaintiffs also point to several excerpts from Dr. Alston's deposition to argue "[her] testimony acknowledged that there were real and serious delays in the provision of medical treatment and supplies as a matter of course at ASMP while []Daniel was incarcerated there." (Id. at 8-9.)   Furthermore, Plaintiffs argue Dr. Alston is responsible for the claims related to Daniel's medical equipment because "even if the health services administrator technically place[d] the order, Dr. Alston had supervisory responsibility for ensuring that medical practitioners had the tools they need to do . . . their job." (Id. at 10.)   In her reply, Dr. Alston contends Dr. Young left ASMP two months after Daniel arrived and "has no meaningful knowledge of the conditions under which Daniel was incarcerated or treated." (Doc. 59, at 3.) She also argues that the problems Plaintiffs raise by citing to her deposition do not illustrate those problems occurred during Daniel's treatment. (Id.)

As an initial matter, Plaintiffs' supervisory claim against Dr. Alston fails because there is no evidence to establish a constitutional violation by her subordinates.   Even assuming the treatment delays or problems with catheter sizing constitutes deliberate indifference, Plaintiffs have not presented evidence showing that these problems impacted Daniel's treatment during his time of incarceration. See Hardy v. Ga. Dep't of Corr., No. CV 117-172, 2021 WL 3610466, at *4 (S.D. Ga. Aug. 13, 2021), *appeal*

14

*dismissed sub nom.* <u>Hardy v. Fountain</u>, No. 21-13112, 2021 WL 6197352 (11th Cir. Oct. 4, 2021) (requiring plaintiff to show "causation between [the] indifference and the plaintiff's injury" to prevail on a claim of deliberate indifference). Without an underlying constitutional violation, Plaintiffs cannot maintain a Section 1983 action for supervisory liability. <u>See</u> <u>Mann v. Taser Intern., Inc.</u>, 588 F.3d 1291, 1308 (11th Cir. 2009) (citing <u>Hicks v. Moore</u>, 422 F.3d 1246, 1253 (11th Cir. 2005)) ("Plaintiffs' claims under a theory of supervisory liability fail because the underlying [Section] 1983 claims fail.").

Moreover, even if Plaintiffs could establish an underlying constitutional violation, the Court finds Plaintiffs fail to demonstrate a casual connection as required for supervisory liability. First, Plaintiffs fail to demonstrate there was a history of widespread abuse sufficient to put Dr. Alston on "actual or constructive notice of a flagrant, persistent pattern of violations." <u>Goebert</u>, 510 F.3d at 1332. Plaintiffs' allegations of failures are premised on problems with delayed care and lack of appropriate catheter sizing. (Doc. 58, at 8-9.) However, as to the problems with delayed care, Plaintiffs do not provide evidence that Dr. Alston failed to correct these problems. In fact, Dr. Alston's testimony does not show that she failed to correct the delays; rather, she merely acknowledges that delays happened. (<u>Id.</u> at 8 (citing Doc. 54-5, at 35:4-8).) Furthermore, Dr. Alston

acknowledges the delay in getting prisoners outside treatment but explains what was done to try and prevent delay. (See Doc. 54-5, at 32:9-36:15.)   Additionally, Dr. Alston's testimony relating to risks of a burst colostomy bag does not demonstrate a history of widespread abuse but merely was in response to questions about her general knowledge regarding "skin breakdown" and policies and procedures to prevent bedsores. (See id. at 27:13-28:5, 35:19-36:4.)   Moreover, Plaintiffs' argument that their Complaint discloses Dr. Young and his concerns is unconvincing because allegations in a complaint are not evidence for purposes of summary judgment.   Celotex, 477 U.S. at 324.   Importantly, other than alleging delays, Plaintiffs do not provide any evidence showing Daniel did not receive adequate medical treatment or that delays in his treatment caused inadequate treatment.[4]   See Vasquez v. Rogers, No. 5:07-CV-366, 2008 WL 4470397, at *4 (M.D. Ga. Sept. 30, 2008) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence in the record* to establish the detrimental effect of delay in medical treatment to succeed.") (emphasis in original). Regarding the problems with catheter sizing, Plaintiffs do not

---

[4] Dr. Alston argues "Defendants have retained expert physicians . . . who have opined that the medical staff at ASMP handled Daniel's complex medical case appropriately." (Doc. 54-1, at 11.)  However, the Court notes that Plaintiffs have not provided any evidence to: (1) rebut Dr. Alston's showing that the delays and catheter sizing did not constitute deliberate indifference or (2) support their allegation that Daniel's medical treatment was inadequate.

16

demonstrate there were ever actual problems with catheter sizing that would put Dr. Alston on notice.  Based on this, Plaintiffs fail to show a history of widespread abuse sufficient to put Dr. Alston on notice.

Second, Plaintiffs do not point to a custom or policy that resulted in deliberate indifference.  Third, there are no allegations that Dr. Alston directed subordinates to act unlawfully, or that she failed to stop subordinates she knew would act unlawfully.  Therefore, the Court finds that Plaintiffs fail to demonstrate a causal connection between Dr. Alston's conduct, or lack of conduct, and the alleged constitutional violation.

Accordingly, because Plaintiffs cannot prove an underlying constitutional violation or establish the causal connection between Dr. Alston's conduct and the alleged constitutional violation, Dr. Alston is entitled to summary judgment.

**B. Qualified Immunity**

Although the Court has already found Dr. Alston entitled to summary judgment, out of an abundance of caution it will also address her argument regarding qualified immunity.  Qualified immunity protects government officials under Section 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S.

17

800, 818 (1982)).  Because Plaintiffs do not dispute that Dr. Alston was acting within the scope of her discretionary authority at all relevant times, Plaintiffs bear the burden to (1) "make out a violation of a constitutional right" and (2) to show that the right that she claims the defendants violated was "clearly established at the time of [their] alleged misconduct."  Wade, 67 F.4th at 1370 (citation and quotation marks omitted).

For the reasons discussed above, Plaintiffs fail to demonstrate there was a violation of Daniel's rights under the Eighth Amendment.  Therefore, Plaintiffs have failed to meet their burden to establish that Dr. Alston is not entitled to qualified immunity.  Accordingly, because Dr. Alston was acting within the scope of her discretionary duties and Plaintiffs cannot prove a constitutional violation, Dr. Alston is also entitled to qualified immunity on the claims asserted against her.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' request to amend is **DENIED** and Defendants' motion for summary judgment (Doc. 54) is **GRANTED**.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants Homer Bryson, Stan Shepard, Randy Brown, and Mary Alston, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

18

**ORDER ENTERED** at Augusta, Georgia, this ___16th___ day of August, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA